## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN C. and MELISSA DUFFIE, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-06-2870 |
| | § | |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND OPINION

In this tax refund suit, the plaintiffs, John Duffie and Melissa Duffie, allege that the Internal Revenue Service improperly assessed enhanced or penalty interest against them under 26 U.S.C. § 6621(c). That statute, which was effective for only a few years, provides for interest at 120% of the statutory interest rate when there is a substantial underpayment of taxes attributable to a tax-motivated transaction.

John Duffie became a limited partner in American Agri-Corp, Inc. ("AMCOR") in 1984. His proportionate share of the partnership's income loss was reported on the Duffies' 1984 joint income tax return. The IRS subsequently disallowed AMCOR expense deductions for tax year 1984, reducing the partnership's loss. As a result, partners, including the Duffies, had underpaid their income tax liability for 1984. The IRS assessed enhanced interest against the Duffies under Section 6621(c) for the underpayment. The Duffies seek a refund.

The parties have filed cross-motions for summary judgment. The Duffies seek summary judgment that as a matter of law, imposing the Section 6621(c) enhanced or penalty rate of interest was erroneous because it is based on a Tax Court judgment entered after a settlement of partnership-level items that did not decide partner-level issues critical to assessing the interest. The government asserts that the Duffies' claims are barred by *res judicata* and that this court lacks subject-matter jurisdiction over the refund claim because it would require the court to reexamine the partnership items resolved in the Tax Court.

Based on a careful review of the motions, the pleadings, the record, and the applicable law, this court denies the Duffies' motion for summary judgment and grants the government's cross-motion. Final judgment dismissing this case is entered by separate order. The reasons for this ruling are set forth in detail below.

## I.   Background

### A.   The Tax Equity and Fiscal Responsibility Act of 1982

Partnerships file informational tax returns, but partnerships are not subject to federal income taxes. 26 U.S.C. § 701. Instead, a partnership is treated as a conduit through which income passes to its partners, who are responsible for reporting their pro rata share of tax on their individual income tax returns. *Id.*

Before 1982, examining a partnership for federal tax purposes was a tedious process. A partnership filed an informational tax return on a Form 1065, which reflected the distributive shares of partnership income, gains, deductions, and credits attributable to the partners. If the IRS sought to adjust an item on a partnership return, the IRS had to examine

2

each partner's individual return.  As a result, the IRS could not ensure consistent adjustments of partnership items among partners.  In response, Congress enacted the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, 96 Stat. 324, 648-671 ("TEFRA").

TEFRA consolidated the partnership-level audit and adjustment procedures by requiring that "the tax treatment of any partnership item shall be determined at the partnership level."  26 U.S.C. § 6221.  TEFRA "created a single unified procedure for determining the tax treatment of all partnership items at the partnership level, rather than separately at the partner level."  *In re Crowell*, 305 F.3d 474, 478 (6th Cir. 2002).  After TEFRA, the IRS could adjust partnership items "at a singular proceeding, and then subsequently assess all of the partners based upon the adjustment to that particular item.  The IRS would not have to conduct individual 'partner level' proceedings for each member of a partnership."  *Prati v. United States*, 81 Fed. Cl. 422, 427 (Fed. Cl. 2008).

TEFRA defines a "partnership item" as "any item required to be taken into account for the partnership's taxable year under any provision of Subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of [subtitle F], such item is more appropriately determined at the partnership level than at the partner level."  26 U.S.C. § 6231(a)(3).  The regulations provide that items "more appropriately determined at the partnership level" include the gains, losses, deductions, and credits of a partnership.  26 C.F.R. § 301.6231(a)(3)-1.  The term "partnership item" also "includes the accounting practices and the legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc."

3

26 C.F.R. § 301.6231(a)(3)-1(b).

A "nonpartnership item" is "an item which is (or is treated as) not a partnership item." 26 U.S.C. § 6231(a)(4).  The tax treatment of nonpartnership items requires partner-specific determinations that must be made at the individual partner level.  *See Crnkovich v. United States*, 202 F.3d 1325, 1328-29 (Fed. Cir. 2000).

TEFRA also includes a hybrid category of "affected items."  An "affected item" is "any item to the extent such item is affected by a partnership item."  26 U.S.C. § 6231(a)(5).  For example, a taxpayer-partner's medical expense deduction under 26 U.S.C. § 213(a) is an "affected item."  Because a taxpayer can only deduct medical expenses to the extent those expenses exceed 7.5% of adjusted gross income, a change in the partnership's income affects the amount of the partner's deduction.  Affected items can have both partnership-item and nonpartnership-item components.  For example, determining a limited partner's "amount at risk" for purposes of 26 U.S.C. § 465 may require a partnership-item determination of the amount of partnership debt and a nonpartnership-item determination of the amount of that debt assumed by the limited partner.

There are two different types of affected items.  "The first type of affected items requires only a computational adjustment at the partner level, which can only be made at the conclusion of the partnership level proceeding."  *Woody v. Comm'r of Internal Revenue*, 95 T.C. 193, 201-02 (1990) (citing *N.C.F. Energy Partners v. Comm'r of Internal Revenue*, 89 T.C. 741, 744, 1987 WL 45298 (1987)).  "The term 'computational adjustment' means the change in the tax liability of a partner which properly reflects the treatment under this

subchapter of a partnership item."  26 U.S.C. § 6231(a)(6).  "A computational adjustment may include a change in tax liability that reflects a change in an affected item where that change is necessary to properly reflect the treatment of a partnership item."  26 C.F.R. § 301.6231(a)(6)-1T(a).  Such a "computational affected item" may be applied to the individual partner without any factual determination at the partner level.  "The other type of affected item is one that is dependent upon factual determinations (other than a computation) relating to an adjustment made at the partner level."  *Woody*, 95 T.C. at 202; *N.C.F. Energy Partners,* 89 T.C. at 744-75.  These affected items require fact-finding particular to the individual partner.

If the IRS decides to adjust any partnership items on a partnership's informational income tax return, it must notify the individual partners of the adjustment by issuing a Notice of Final Partnership Administrative Adjustment ("FPAA").  26 U.S.C. § 6223; *see also Kaplan v. United States*, 133 F.3d 469, 471 (7th Cir. 1998).  A Notice of FPAA sets out the proposed adjustments, e.g. disallowing all or part of partnership's deductions, and lists the grounds for the adjustments.  *Id.*  For ninety days after a Notice of FPAA issues, the Tax Matters Partner[1] has the exclusive right to challenge the proposed adjustments in Tax Court, the Court of Federal Claims, or a United States District Court.  26 U.S.C. § 6226(a).  If the TMP does not file suit challenging the proposed adjustments within this period, other partners have sixty days to file a petition for readjustment.  *Id.* § 6226(b)(1).  If a partnership-

---

[1] A tax matters partner is the partner designated to act as a liaison between the partnership and the IRS in administrative proceedings and as the representative of the partnership in judicial proceedings.

level challenge is filed, each partner in the partnership is deemed a party to the case.  26 U.S.C. § 6226(c)(1).

If a partner settles his tax liability with the IRS, the partner will not be able to participate in the partnership-level suit and will be bound by the settlement agreement terms. *Id.* § 6228(a)(4), § 6226(c)(1).  If the IRS enters into a settlement agreement with any partner with respect to partnership items, other partners are entitled to a consistent settlement as to those partnership items.  26 U.S. C. § 6224(c)(2).  The TMP may bind "non-notice" partners to a settlement agreement resolving partnership items if the TMP expressly states in the agreement that it "shall bind the other partners."  26 U.S.C. § 6224(c)(3)(A).  A non-notice partner is a partner with less than a 1% interest in a partnership that has more than 100 partners.  *See* 26 U.S.C. §§ 6231(a)(8), 6223(b)(1).

In a partnership-level proceeding, the Tax Court has jurisdiction to determine all partnership items for the tax year to which the FPAA relates.  The Tax Court also has jurisdiction to determinate the proper allocation of the partnership items among the partners. 26 U.S.C. § 6226(f).  For tax years before 1997, the Tax Court does not have jurisdiction over nonpartnership items or over affected items.[2]  *Id.*  The TMP and the IRS may reach an agreed decision in the Tax Court as to partnership items.  TAX COURT R. 248(b).  In a partner-level refund action, courts do not have jurisdiction over partnership items.  26 U.S.C. § 7422(h).

---

[2] Congress amended Section 6226(f) in 1997 to grant the Tax Court jurisdiction over "the applicability of any penalty, addition to tax, or additional amount which related to an adjustment to a partnership item."  The amendment was limited to tax years ending after August 5, 1997.

But a court does have jurisdiction in a partner-level refund action over partnership items that were converted to nonpartnership items through a settlement with the IRS. *Id.* § 6231(b)(1)(C).

### B.    Factual Background

In the early 1980s, AMCOR organized a number of limited partnerships for which it acted as general partner.  These partnerships had as stated goals acquiring agricultural land, investing in agricultural ventures, and growing crops.[3]  AMCOR solicited investments from high-income professionals across the country.  Each partner in an AMCOR partnership would receive a projected tax loss from crops planted in the first year of roughly twice that partner's investment.  Investors paid the farming expenses up front and deducted the amount invested on their tax returns.  The next year, when the crops were harvested, the amount of loss in excess of the amount invested would be subject to taxes.  However, the farming expenses typically exceeded any income realized from the farming activities.  In 1987, the IRS began an investigation and audit into the AMCOR partnerships to determine whether they were impermissible tax shelters.

In 1984, John Duffie invested as a limited partner in one of the AMCOR partnerships, Texas Farm Venturers, a Texas limited partnership.[4]  The general partners in Texas Farm

---

[3]In *Crop Associates-1986 v. Comm'r of Internal Revenue*, T.C. Memo 2000-216, 2000 WL 976792 (U.S. Tax Court 2000), the court found that from its inception in 1981 until 1986, AMCOR was engaged in the business of promoting tax shelter partnerships.

[4]Although Melissa Duffie was not a partner in Texas Farm Venturers, she is a party to this lawsuit because she filed joint tax returns with her husband, John Duffie.  *See* 26 U.S.C. § 6013(d)(3).

7

Venturers in 1984 included AMCOR and Robert A. Wright.  John Duffie held a 0.5966%

interest in Texas Farm Venturers.  On March 25, 1985, Texas Farm Venturers timely filed

its partnership return for tax year 1984.  (Docket Entry No. 29, Appendix at 9).  The return

states that Texas Farm Venturers had one hundred partners.[5]  The partnership reported an

ordinary income loss of $9,698,031.00 for 1984.  (*Id.*).  The Duffies timely filed their 1984

income tax return on June 18, 1985.  (Docket Entry No. 30, Ex. 2).  The Duffies' joint return

reported John Duffie's share of the Texas Farm Venturers loss as $57,859.00.  (Docket Entry

No. 30, Ex. 1).

After investigating the AMCOR partnerships, the IRS issued a Notice of FPAA to the

TMPs of a number of the AMCOR partnerships in 1990 and 1991.  The notices proposed to

adjust the partnership items of these AMCOR partnerships for tax years 1984, 1985, and

1986, as applicable.  Wright, the TMP of Texas Farm Venturers, received a Notice of FPAA

on April 10, 1991.  (Docket Entry No. 30, Ex. 3).  The FPAA listed several reasons for

disallowing part of the Texas Farm Venturer farming expenses.  The reasons included that

the IRS had determined that the partnership's activities were a series of sham transactions

and that the activities lacked economic substance.  (*Id.*).

On July 10, 1991, limited partners in Texas Farm Venturers other than the TMP filed

a petition in United States Tax Court contesting the FPAA for the partnership.  (Docket Entry

---

[5] Although the Duffies' summary judgment motion states that John Duffie was a non-notice partner (Docket Entry No. 30 at 17), the record, including the partnership return, shows that John Duffie was a notice partner because Texas Farm Venturers did not have more than one hundred partners.

No. 29, Appendix at 16-49).  The case was assigned case number 15058-91.  (*Id.* at 16.).  The Duffies became parties to the Tax Court case under 26 U.S.C. § 6226(c), which treats non-participating partners as parties to a case in which a partner challenges the FPAA.  The Tax Court consolidated case number 15058-91 with six other cases involving AMCOR partnerships.  Wright subsequently intervened as the Texas Farm Venturers TMP.

In 1997, while the Tax Court cases were pending, several limited partners in AMCOR partnerships settled their income tax liability with the IRS by executing Forms 870-P(AD). The IRS imposed enhanced interest under 26 U.S.C. § 6621(c) against these partners for underpayment of taxes.  Morris Weiner, a limited partner in several AMCOR partnerships, challenged the imposition of enhanced interest.  In *Weiner v. United States*, 389 F.3d 152 (5th Cir. 2004), *cert. denied*, 544 U.S. 1050 (2005), the appellate court concluded that the IRS improperly assessed enhanced interest against Weiner under Section 6621(c).  Because the FPAA listed multiple independent reasons for disallowing the partnership's deductions, there was "no way to determine, without additional superfluous litigation, whether the taxpayer's underpayment is 'attributable to' a reason that also qualifies as a tax-motivated transaction (such as a sham)."  *Id.* at 162.

The Duffies did not settle with the IRS.  The Duffies remained parties to the Texas Farm Venturers Tax Court case.  On April 16, 2001, the IRS moved under Tax Court Rule 248(b) for entry of decisions in the AMCOR cases.  (Docket Entry No. 29, Appendix at 50). The Motion for Entry of Decisions stated that the IRS and the TMPs for the AMCOR

9

partnerships had reached "contingent agreements with respect to all of the disputed partnership items at issue in the FPAA Cases." (*Id.* at 52, ¶ 8). The agreements were contingent on the Tax Court's entry of the Decision submitted with the IRS motion. The IRS Motion for Entry of Decisions stated that all partners "in each partnership whose partnership items are to be determined in the FPAA Cases and who meet the interest requirements of I.R.C. § 6226(d) are deemed parties to the partnership proceedings," would be bound by the determination of the partnership items in the applicable Decision, and would be "assessed any additional tax resulting from the adjustments contained in the Decision documents pursuant to . . . I.R.C. § 6225, 6230(a) and 6231(a)(6). . . ." (*Id.*, ¶ 9). The Motion also stated that the IRS had made "preliminary determinations as to certain affected items, including the liability of the liability of the limited partners for additions to tax pursuant to I.R.C. § 6653 and 6661, and for the assessment of interest on the deficiencies in the partners' income tax at the increased rate prescribed by former I.R.C. § 6621(c); which determinations the tax matters partner and other partners are expected to dispute." (*Id.*, ¶ 16). The Motion stated that "[o]nce the Decisions . . . are entered by the Court and become final, respondent will assess any deficiency in income tax due from each partner by way of computational adjustment, under I.R.C. § 6231(a)(6) based upon the adjustment contained in the Decisions, . . . and based upon the determination made in the Decisions, respondent will assess interest which has accrued thereon under former I.R.C. § 6621(c). . . ." (*Id.*, ¶ 20).

On June 14, 2001, the Duffies moved in the Tax Court for leave to file a notice of

election to participate out of time.  (Docket Entry No. 29, Appendix at 67-69).  The motion

for leave stated that the Duffies did not object to entry of the proposed decision.  Because

entry of the agreed decisions in the Tax Court could be halted by one objecting partner from

any of the partnerships, the Duffies sought to preserve their right to a consistent settlement

with the IRS under Section 6224(c)(2).  The right to a consistent settlement was only

preserved for sixty days after issuance of the Notice of FPAA.  The Tax Court denied the

Duffies' motion on July 19, 2001.

The Tax Court entered its decision in the Texas Farm Venturers case on July 19, 2001.

(Docket Entry No. 30, Ex. 6).  The decision stated that the partnerships' claimed farming

expenses would be reduced by $4,154,659.00.  (*Id.*).  The Tax Court's decision also stated:

> [t]hat the adjustments to partnership income and expense for the
> taxable year 1984 are attributable to transactions which lacked
> economic substance, as described in former I.R.C. §
> 6621(c)(3)(A)(v), so as to result in a substantial distortion of
> income and expense, as described in I.R.C. § 6621(c)(3)(A)(iv),
> when computed under the partnership's cash receipts and
> disbursements method of accounting.

(*Id.*).  The contingent agreement stated that all parties' right to appeal was waived.  The

Duffies did not appeal the Tax Court's decision.

The adjustment to the Texas Farm Venturers partnership items – specifically, the

$4,154,659.00 reduction in farming expenses – resulted in a reduction of John Duffie's share

of the partnership loss.  This increased the Duffies' taxable income for 1984 by $27,787.000,

resulting in $8,540.00 in unpaid income tax liability.  On December 19, 2001, the Duffies

11

paid the IRS an advance remittance of $44,000.00.  On July 19, 2002, the IRS sent the Duffies a letter with an enclosed form, Form 4549A, that showed the adjustments to the Duffies' 1984 income tax liability as a result of the Tax Court's decision.  (Docket Entry No. 30, Ex. 10).  On August 12, 2002, the IRS assessed $8,540.00 in income tax liability and $43,991.34 in interest against the Duffies for tax year 1984.  (Docket Entry No. 29, Appendix at 6).  This included interest at the penalty rate under Section 6621(c).  The interest amount was corrected that same day to add $416.31 in interest previously allowed.  (Docket Entry No. 29, Appendix at 72, 85).  The Duffies' $44,000.00 advance was applied to the assessment.  The IRS sent the Duffies a bill for the remaining balance of $8,947.65.  The Duffies paid the IRS $8,947.65 on September 9, 2002.  (*Id.*).

On August 11, 2004, the Duffies filed an amended income tax return for 1984, claiming a tax refund of $8,540.00.   (Docket Entry No. 29, Appendix at 75-85).  On the same day, the Duffies also filed a refund claim, IRS Form 843, for tax year 1984, requesting a refund of $43,991.34 in interest.  (*Id.* at 86-95).  Each document had a letter attached asserting why the Duffies were entitled to a refund.  The Duffies claimed that the statute of limitations on tax year 1984 had expired before the taxes were assessed; that Section 6621(c) interest was improperly assessed; that *Avon Products, Inc. v. United States*, 588 F.2d 342 (2d Cir. 1978), restricted the amount of interest that could be assessed; that interest should be abated under 26 U.S.C. § 6404(e); and that a refund should be issued for the amount the Duffies would have received had the IRS not refused to compromise the Duffies' tax

12

liability.  (Docket Entry No. 29, Appendix at 79-81, 89-91).  The IRS denied the Duffies'

refund claims on September 8, 2004.  (*Id.* at 96).  The Duffies filed this lawsuit on September

8, 2006.  (Docket Entry No. 1).

### C.    The Summary Judgment Evidence

The relevant summary judgment evidence in the record includes the Duffies' original

1984 Income Tax Return Form 1040[6]; John Duffie's Schedule K-1 form stating his

proportionate share of the Texas Farm Venturers credits and deductions[7]; the Texas Farm

Venturers 1984 Form 1065[8]; the Notice of FPAA sent by the IRS to the Texas Farm

Venturers TMP[9]; the Tax Court petition filed by partners of Texas Farm Venturers other than

the TMP challenging the adjustments in the FPAA[10]; the IRS's Motion for Entry of Decisions

in the Tax Court[11]; the Duffies' motion in the Tax Court for leave to file notice of election

to participate out of time[12]; the Tax Court's decision[13]; the Form 4549-A that the IRS sent to

---

[6] (Docket Entry No. 30, Ex. 2).

[7] (*Id.*, Ex. 1).

[8] (Docket Entry No. 29, Appendix at 9-13).

[9] (Docket Entry No. 30, Ex. 3).

[10](Docket Entry No. 29, Appendix at 16-31).

[11](*Id.*, Appendix at 50-66).

[12] (*Id.*, Appendix at 67-69).

[13] (Docket Entry No. 30, Ex. 6).

the Duffies to notify them of adjustments to their income tax liability for 1984[14]; the Duffies'
amended 1984 Income Tax Return Form 1040X[15]; the Duffies' refund claim form and
attached explanatory letter[16]; and the IRS letter denying the Duffies' refund claim.[17]

## II.    Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the
moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  "The movant
bears the burden of identifying those portions of the record it believes demonstrate the
absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347,
349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy
its initial burden by "'showing' – that is, pointing out to the district court – that there is an
absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325.
While the party moving for summary judgment must demonstrate the absence of a genuine
issue of material fact, it does not need to negate the elements of the nonmovant's case.
*Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted).  "'An
issue is material if its resolution could affect the outcome of the action.'"  *DIRECTV, Inc. v.*

---

[14] (*Id.*, Ex. 10).

[15] (Docket Entry No. 29, Appendix at 75-76).

[16] (*Id.*, Appendix at 86-91).

[17] (*Id.*, Appendix at 74).

*Robson*, 420 F.3d 532, 536 (5th Cir. 2005) (quoting *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003)).  "If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response." *Quorum Health Res., L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 471 (5th Cir. 2002) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. "[T]he nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (citation omitted).  "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by 'only a 'scintilla' of evidence.'" *Little*, 37 F.3d at 1075 (internal citations omitted).  In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).

## III.   Analysis

### A.   Voluntary Dismissal of the Duffies' Claims Based on the Statute of Limitations and Interest Abatement

The Duffies' complaint alleged that the IRS assessed tax and interest after the statute

of limitations expired, entitling them to a refund of amounts paid under 26 U.S.C. § 6401. (Docket Entry No. 1). The complaint also alleged that the IRS erroneously failed to abate interest under 26 U.S.C. § 6404(e). (*Id.*). In its cross-motion for summary judgment, the government correctly noted that district courts lack jurisdiction over both of these claims. In *Weiner*, 389 F.3d at 153, the Fifth Circuit held that district courts do not have jurisdiction in a partner-level refund suit over a claim that tax and interest were assessed after the statute of limitations expired. *Id.* In *Hinck v. United States*, 2007-47 I.R.B. 1032, 127 S. Ct. 2011, 167 L.Ed. 888 (2007), the Supreme Court held that district courts lack jurisdiction to hear claims regarding the IRS's refusal to abate interest under Section 6404(e). In their response to the cross-motion for summary judgment and reply to the response in opposition to their motion for summary judgment, the Duffies moved for voluntary dismissal of both the claims based on the statute of limitations and the claims based on interest abatement. (Docket Entry No. 35 at 1). Under FED R. CIV. P. 41(a)(2), this court grants the Duffies' motion for voluntary dismissal of both claims.

### B.    Claim Preclusion

The government argues that the Duffies' claim that the IRS improperly assessed enhanced interest under Section 6621(c) is barred by claim preclusion, or *res judicata*. The Duffies do not dispute the preclusive effect of the Tax Court's agreed decision on partnership items. Interest, including interest under Section 6621(c), is an "affected item" that has both partnership and nonpartnership components. The Duffies dispute the *res judicata* effect of

16

the Tax Court's decision on the assessment of enhanced interest under 26 U.S.C. § 6621(c).

Claim preclusion "bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005), *cert. denied*, 547 U.S. 1055, 126 S.Ct. 1662, 164 L.Ed.2d 397 (2006), *citing Petro-Hunt, L.L.C. v. United States,* 365 F.3d 385, 395 (5th Cir. 2004).  The test for claim preclusion has four elements: (1) the parties in the subsequent action are identical to, or in privity with, the parties in the prior action; (2) the judgment in the prior case was rendered by a court of competent jurisdiction; (3) there has been a final judgment on the merits; and (4) the same claim or cause of action is involved in both suits.  *Id.; see also Ellis v. Amex Life Ins. Co.*, 211 F.3d 935, 937 (5th Cir. 2000).  If a party can only win the suit by convincing the court that the prior judgment was in error, the second suit is barred. *Test Masters*, 428 F.3d at 571 (internal citations omitted).  When all four elements are present, claim preclusion prohibits a litigant from asserting "any claim or defense in the later action that was or could have been raised in support of or in opposition to the cause of action asserted in the prior action."  *United States v. Shanbaum*, 10 F.3d 305, 310 (5th Cir. 1994).

### 1.   *Identical Parties in Both Actions*

The first element of claim preclusion is met here because the parties in this action are identical to the parties in the Tax Court case.  Under 26 U.S.C. § 6226(c)(1), John Duffie was treated as a party to the Texas Farm Venturers Tax Court Case, in which the IRS was the opposing party.

## 2.    *Judgment Rendered by a Court of Competent Jurisdiction*

The Duffies argue that the Tax Court was not a "court of competent jurisdiction" with respect to imposing enhanced interest under Section 6621(c) on partners of the partnership. In a partnership-level proceeding, the Tax Court's jurisdiction is limited to determining partnership items and the proper allocation of those partnership items among the partners. 26 U.S.C. § 6226(f).  Section 6621(c), an affected item, imposes interest at 120% of the statutory rate for substantial underpayment of tax.  A tax underpayment is substantial when it exceeds $1,000 for the tax year in question.  26 U.S.C. § 6621(c)(2).  The IRS may not assess interest under Section 6621(c) unless the substantial underpayment is attributable to one of the tax-motivated transactions defined by statute.  Tax-motivated transactions include "any sham or fraudulent transaction," 26 U.S.C. § 6621(c)(3)(A)(v), and any use of an accounting method that may result in a substantial distortion of income, 26 U.S.C. § 6621(c)(3)(A)(iv).  In the Texas Farm Venturers case, the Tax Court stated: "That the adjustments to partnership income and expense for the taxable year 1984 are attributable to transactions which lacked economic substance, as described in former I.R.C. § 6621(c)(3)(A)(v) [sham transaction], so as to result in a substantial distortion of income and expense, as described in I.R.C. § 6621(c)(3)(A)(iv) [accounting method] when computed under the partnership's cash receipts and disbursements method of accounting; . . ." (Docket Entry No. 30, Ex. 6).

The Duffies argue that the Tax Court's determination that the partnership transactions

18

that resulted in the adjustments "lacked economic substance, as described in former I.R.C.

§ 6652(c)(3)(A)(v)" is not a finding of tax-motivated transactions. (Docket Entry No. 30,

at 30). In other AMCOR partnership cases, courts have examined the language from the Tax

Court's agreed decision in the consolidated cases and found that it clearly stated that the

partnership's transactions were tax-motivated, allowing the IRS to impose interest under

Section 6621(c). *See Nault v. United States*, 517 F.3d 2, 5 (1st Cir. 2008); *Kimball v.*

*Comm'r of Internal Revenue*, T.C. 2008-78, 2008 WL 862339 (U.S. Tax Court 2008)

(because the partnership's transactions lacked economic substance, they constituted tax-

motivated transactions). In *Nault*, the court stated:

> The reference to [Section 6621(c)(3)(A)(v)], which helps to
> define tax-motivated transactions, confirms that the transactions
> were "sham[s] or fraudulent transaction[s]" and therefore lacked
> economic substance. The phrase "so as to result in a substantial
> distortion of income and expense" simply tracks the language of
> the former 26 U.S.C. § 6621(c)(3)(A)(iv), which likewise helps
> to define tax-motivated transactions. Thus, each phrase
> independently establishes that the adjustments were attributable
> to the partnerships' tax-motivated activities.

517 F.3d at 5 (internal citations omitted).

The government asserts that the Tax Court has already determined that the

transactions that resulted in the adjustments to the partnership items were tax-motivated

transactions; this determination is binding on the Duffies; and this determination meets the

requirements for imposing enhanced tax under Section 6621(c), leaving open only issues that

were not and could not have been addressed in the Tax Court. The open issues do not

include any examination into the character of the underlying transactions.  The Duffies assert that even if the Tax Court finding at the partnership level that the adjustments resulted from transactions that lacked economic substance means that they were "sham" tax-motivated transactions, this determination leaves unresolved issues requiring partner-level determinations, including the individual partner's personal profit motive.  These issues were not and could not be made at the partnership level because the Tax Court does not have subject-matter jurisdiction to determine them.  As a result, according to the Duffies, the Tax Court decision did not resolve their liability for the enhanced interest and they are free to challenge the assessment.

### a.        The Tests for Determining Sham Transaction

The Tax Court's jurisdiction depends on whether the test for determining a sham transaction under Section 6621(c) requires substantive partner-level factual determinations. The genesis of the sham-transaction doctrine is the Supreme Court's decision in *Frank Lyon Co. v. United States*, 435 U.S. 561 (1978).  The Court stated that a transaction will be accorded tax recognition only if it has "economic substance which is compelled or encouraged by business or regulatory realities, is imbued with tax-independent considerations, and is not shaped solely by tax-avoidance features that have meaningless labels attached."  *Id.* at 583-84.

Subsequent case law developed two predominant tests for identifying a sham transaction.  In *Rice's Toyota World, Inc. v. Commissioner*, 752 F.2d 89 (4th Cir. 1985), the

Fourth Circuit adopted a two-prong standard, stating that "[t]o treat a transaction as a sham, the court must find that the taxpayer was motivated by no business purposes other than obtaining tax benefits in entering the transaction, and that the transaction has no economic substance because no reasonable possibility of a profit exists." *Id.* at 91.  The business-purpose prong inquires into the taxpayer's subjective motive for entering the transaction. *Id.* at 92.  The economic-substance prong "requires an objective determination of whether a reasonable possibility of profit from the transaction existed apart from the tax benefits." *Id.* at 94.

The other test, adopted by a majority of the circuits, states that "the[] distinct aspects of the economic sham theory inquiry do not constitute discrete prongs of a rigid two-step analysis, but rather represent related factors both of which inform the analysis of whether the transaction had sufficient substance, apart from its tax consequences, to be respected for tax purposes." *ACM P'ship v. Comm'r of Internal Revenue*, 157 F.3d 231, 247 (3d Cir. 1998), *cert. denied*, 526 U.S. 1017 (1999); *see also Sochin v. Comm'r of Internal Revenue*, 843 F.2d 351, 354 (9th Cir. 1988), *cert. denied*, 488 U.S. 824 (1988); *Rose v. Comm'r of Internal Revenue*, 868 F.2d 851, 854 (6th Cir. 1989); *James v. Comm'r of Internal Revenue*, 899 F.2d 905, 908-09 (10th Cir. 1990); *Winn-Dixie Stores, Inc. v. Comm'r of Internal Revenue*, 254 F.3d 1313, 1316 (11th Cir. 2001).  "The sham transaction doctrine has few bright lines, but '[i]t is clear that transactions whose sole function is to produce tax deductions are substantive shams.'" *Winn-Dixie Stores*, 254 F.3d at 1316 (quoting *Kirchman v. Comm'r of Internal*

*Revenue*, 862 F.2d 1486, 1492 (11th Cir. 1989).

Courts of appeals following the approach followed in most of the jurisdictions to consider the issue have held that while a taxpayer's subjective business purpose or profit motive may be relevant to the sham transaction inquiry, the lack of a subjective profit motive is not required to assess interest at the enhanced rate under Section 6621(c). *See Thomas v. United States of America*, 166 F.3d 825, 833 (6th Cir. 1999) ("by its plain language I.R.C. § 6621(c) imposes no inquiry into the taxpayer's investment motive when the transaction is found to be a sham); *Chakales v. Comm'r of Internal Revenue*, 79 F.3d 726, 728 (8th Cir. 1996) (no basis for reading a separate state of mind requirement into the sham transaction test for purposes of Section 6621(c)(3)(A)(v)); *Estate of Carberry v. Comm'r of Internal Revenue*, 933 F.2d 1124, 1129-30 (2d Cir. 1991) (upholding enhanced interest under Section 6621(c) without considering the taxpayer's motive); *Karr v. Comm'r of Internal Revenue*, 924 F.2d 1018, 1026 (11th Cir. 1991) (upholding enhanced interest assessment without inquiring into taxpayer's motive because Tax Court found partnership activity lacked economic substance); *Jackson v. Comm'r of Internal Revenue*, 966 F.2d 598, 601 (10th Cir. 1992) (the mere presence of a profit motive does not prevent a transaction from being a sham).

The Fifth Circuit has recognized, but not resolved, the disagreement between those circuits that apply the two-prong test for finding a sham transaction and those that collapse the prongs into a "factors" test. The Fifth Circuit has declined opportunities to determine

what test should apply.  In *Compaq Computer Corp. & Subsidiaries v. Comm'r of Internal Revenue*, 277 F.3d 778, 781-82 (5th Cir. 2001), the court found it unnecessary to determine the appropriate standard for determining a sham transaction because in that case, the taxpayer met its burden on both prongs.  *See id.* at 781-82.[18]  Because *Compaq* did not involve a partnership, "the question of how a partner's individual profit motive fits into the sham inquiry was not at issue in that case."  *Weiner v. United States*, 255 F.Supp.2d 624, 679 (S.D. Tex. 2002).  In *Copeland v. Commissioner*, 290 F.3d 326 (5th Cir. 2002), a partnership case involving a sham transaction, the Fifth Circuit did not "reach the question whether profit motive is to be tested at the individual or partnership level."  *Id.* at 337.  Answering this question was unnecessary in *Copeland* because the IRS relied on 26 U.S.C. § 183 for disallowing the partnership's deductions, a section not applicable to partnerships.  *Id.* at 337.

### b.    Jurisdiction to Determine a Sham Transaction

The Tax Court has held that it does not have jurisdiction in a partnership-level proceeding to determine "whether the adjustments made on [a FPAA] are attributable to a tax motivated transaction pursuant to section 6621(c)."  *Affiliated Equip. Leasing II v. Comm'r of Internal Revenue*, 97 T.C. 575, 576-78, 1991 WL 241149 (1991) (citing *White v. Comm'r of Internal Revenue*, 95 T.C. 209, 212, 1990 WL 125093 (1990)); *see also N.C.F. Energy Partners*, 89 T.C. 741 at 744.  This is because "section 6621(c) interest is

---

[18] *See also IES Industries, Inc. v. United States*, 253 F.3d 350, 353-54 (8th Cir. 2001) (the court expressly declined to decide whether the two-prong test was required because the transactions at issue had both economic substance and business purpose).

23

not a 'partnership item' and is not within the Court's scope of review in a partnership level proceeding," but is rather "an affected item which requires a partner-level determination." *White*, 95 T.C. at 212 (citing *N.C.F. Energy Partners*, 89 T.C. at 745).   The Second and Fourth Circuits agree that interest assessed against a partner under Section 6621(c) is not a partnership item.  *Field v. United States*, 328 F.3d 58, 60 (2d Cir. 2003); *Zfass v. Comm'r of Internal Revenue*, 118 F.3d 184, 192 (4th Cir. 1997).  In *Field*, the Second Circuit stated that enhanced interest under Section 6621(c) is an affected item that turns on factual determinations made at the partner level.   328 F.3d at 60; *see also McGann v. United States*, 76 Fed. Cl. 745, 757 (Fed. Cl. 2007) (assessment of enhanced interest for "tax motivated transactions" is not a partnership item, but an affected item).

In recent cases, courts have held that the Tax Court does have jurisdiction to "make factual findings concerning whether the partnership's transactions were designed merely to secure tax benefits."  *River City Ranches #1 Ltd. v. Comm'r of Internal Revenue*, 401 F.3d 1136, 1143 (9th Cir. 2005); *see also Keener v. United States*, 76 Fed. Cl. 455, 469 (2007); *Prati*, 81 Fed. Cl. at 439.  The Ninth Circuit in *River City Ranches* did not characterize Section 6621(c) interest as a partnership item or an affected item.  The court held that "the nature of the partnership's transactions (i.e., whether the transactions were tax-motivated) is a 'partnership item.'"  401 F.3d at 1143.  The Tax Code defines partnership item as "any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary

provide that, for purposes of [subtitle F], such item is more appropriately determined at the

partnership level than at the partner level." 26 U.S.C. § 6231(a)(3).  The court in *River City*

*Ranches* reasoned:

> The character of the partnership's transactions does relate back
> to subtitle A, because it determines the individual partners'
> personal income taxes–a subtitle A matter.  A partnership's tax
> items affect not the (non-existent) income tax of the
> partnerships, but the income tax of the partners.   A
> partnership's tax items, which determine the partner's taxes,
> are litigated in partnership proceedings–not in the individual
> partner's cases.

*Id.* at 1144 (internal citations omitted).  These cases recognize that a determination of sham

transaction, properly made at the partnership level, affects the individual partner's income

tax liability at the partner level.

In *Keener*, the court concluded that Section 6621(c) interest is an affected item with

a partnership-item component and a nonpartnership-item component.  76 Fed. Cl. at 469.

The nature of a partnership's transactions – whether they are a sham – is the partnership-

item component of assessing Section 6621(c) interest.  *Id.*  Whether a transaction "was a

sham must be resolved first in a partnership-level proceeding, before any consideration can

be given in a refund action to whether the interest should have been imposed on the

individual partner."  *Id.*

Section 6621(c) applies to tax-motivated transactions other than sham transactions,

including "any loss disallowed by reason of Section 465(a)."  26 U.S.C. § 6621(c)(3)(ii).

Section 465 was added to the Tax Code to combat tax shelters caused by nonrecourse financing and other situations in which taxpayers were effectively immunized from loss. *See Comm'r of Internal Revenue v. Tufts*, 461 U.S. 300, 309 n.7 (1983). Under Section 465(a), any loss from an activity covered by the section "shall be allowed only to the extent . . . the taxpayer is at risk." 26 U.S.C. § 465(a)(1). A taxpayer is considered to be at risk for the amount of cash contributed and for certain amounts borrowed for the activity. *Id.* § 465(b). A taxpayer is generally not at risk for "amounts protected against loss through nonrecourse financing, guarantees, stop loss agreements, or other similar arrangements." *Id.* § 465(b)(4).

The *Keener* court drew a parallel between a sham transaction and Section 465(a). Application of the at-risk provisions of Section 465(a) is an affected item. *See Ginsburg v. Comm'r of Internal Revenue*, 127 T.C. 75 (2006); *Greenberg Bros P'ship #4 v. Comm'r of Internal Revenue*, 111 T.C. 98, 202 (1998). Issues concerning items such as the nonrecourse character of partnership notes "are to be resolved in a partnership-level proceeding, with those determinations then being binding on the partners in any refund litigation that would ensue." *Keener*, 76 Fed. Cl. at 467 (citing *Greenberg Bros P'ship*, 111 T.C. at 202). The sham-transaction determination is appropriately made at the partnership level, in a unified proceeding, and not at the individual-partner level.

In *Keener* and *River City Ranches,* the courts distinguished between the actual assessment of interest under Section 6621(c) by the IRS, which requires that the partner's

tax underpayment was greater than $1,000, and the factual determination of whether a partnership was engaged in sham transactions.  The decisions characterizing Section 6621(c) interest as an "affected item" that must be resolved at the partner level did not consider whether Section 6621(c) has a partnership-item component that requires findings at the partnership level.  The court in *Keener* stated that these cases "go astray . . . in assuming that because interest is not itself a partnership item, a court is not required to resolve issues concerning the nature of the partnership's transactions in a unified partnership proceeding." *Id.*

In *Ertz v. Comm'r of Internal Revenue*, 2007 WL 174133 (U.S. Tax Court Jan. 24, 2007), the Tax Court applied *River City Ranches* to hold that it lacked jurisdiction in a partner-level proceeding to determine whether a transaction was tax-motivated under Section 6621(c).  The taxpayer-partner in *Ertz* resided in Idaho and the appeal from the Tax Court's decision was to the Ninth Circuit.  The Tax Court followed the rule that it is bound "to follow a Court of Appeals decision which is squarely [on] point where appeal from [the] decision lies to that Court of Appeals and that court alone."  *Golsen v. Comm'r of Internal Revenue*, 54 T.C. 742, 756, 1970 WL 2191 (1970), *aff'd* 445 F.2d 985 (10th Cir. 1971), *cert. denied*, 404 U.S. 940 (1971).  Under the Ninth Circuit precedent, the Tax Court held that jurisdiction to determine whether a transaction was tax-motivated under Section 6621(c) was only present in a partnership-level proceeding.

The *River City Ranches* rule regarding Tax Court jurisdiction is consistent with the

27

Ninth Circuit's approach to sham transaction in the partnership context.    "The determination of an existing profit motive is made at the partnership level and does not address the subjective intent of the particular partner in question." *Hill v. Commissioner*, 204 F.3d 1214, 1218 (9th Cir. 2000).  Upon finding that a partnership transaction was a sham, as long as the partner's underpayment was $1,000 or greater, the IRS may impose interest under Section 6621(c) irrespective of the taxpayer-partner's subjective intent. *See id.* at 1220.

The Duffies argue that in the Fifth Circuit, a sham-transaction determination requires a finding that the individual partner lacked a profit motive.  In partnership cases decided before *Compaq* and *Copeland*, the Fifth Circuit affirmed Tax Court decisions that the IRS properly imposed interest at the Section 6621(c) enhanced rate.  *See Chamberlain v. Comm'r of Internal Revenue*, 66 F.3d 729, 732 (5th Cir. 1995); *Lukens v. Comm'r of Internal Revenue*, 945 F.2d 92 (5th Cir. 1991); *Durrett v. Comm'r of Internal Revenue*, 71 F.3d 515 (5th Cir. 1996).  In these cases, the Tax Court had found that the individual partner lacked a profit motive, despite testimony to the contrary. *Chamberlain*, 66 F.3d at 732; *Lukens*, 945 F.2d at 99-100; *Durrett*, 71 F.3d at 517.  The Fifth Circuit affirmed the imposition of interest at the Section 6621(c) rate in these cases because the Tax Court's factual finding that the individual partners lacked a profit motive was not clearly erroneous.

The Fifth Circuit has not decided which of the two tests followed in the circuit courts is the appropriate test for sham transaction.  *Copeland*, 290 F.3d at 337-38.  In

*Transcapital Leasing Associates 1990-II LP v. United States*, 246 Fed. Appx. 266 (5th Cir. 2007), the court stated it was "unnecessary to adopt either variant of the sham transaction doctrine" "because the transaction lacked a genuine business purpose and was economically insubstantial."  The court also expressed "no opinion on whether the [profit motive] analysis of an alleged sham transaction . . . focuses on the subjective motivation of the taxpayer partner or the flow-through partnership entity."  *Id.*  In *Chamberlain*, *Lukens*, and *Durrett*, the Fifth Circuit merely affirmed the result reached in the Tax Court, based in part on the fact that the Tax Court's finding that the individuals lacked a profit motive was not clearly erroneous.

Contrary to the Duffies' assertion, the Fifth Circuit does not require a finding that an individual partner lacked a profit motive to impose interest at the enhanced rate under Section 6621(c).  While the individual taxpayer's subjective business purpose or profit motive may be relevant to the sham-transaction inquiry, lack of profit motive is not required to impose interest at the enhanced rate.  *See Thomas*, 166 F.3d at 833; *Karr*, 924 F.2d at 1026; *see also Cherin v. Commissioner*, 89 T.C. 986, 993 (1987) (the Tax Court has "never held that the mere presence of an individual's profit objective will require [it] to recognize for tax purposes a transaction which lacks economic substance); *Bohrer v. Commissioner*, 945 F.2d 344, 348 n. 5 (10th Cir.1991) (noting that either lack of profit motive or lack of economic substance can render a transaction a sham).  In weighing the relevant factors to determine whether a partnership transaction is a sham – economic

substance and business purpose – a court is not required to determine whether the individual partner lacked a profit motive in deciding that enhanced interest applies.

The Duffies concede that under Tax Court Rule 248(b) and the language of the IRS's Motion for Entry of Decisions, they are bound by the Tax Court's determination of partnership items.  In its Motion for Entry of Decisions, the IRS took the position that enhanced interest under Section 6621(c) was an affected item, not a partnership item, which is a judicial admission binding on the IRS.  *See Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476 (5th Cir. 2001) (holding "[a] judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them.").

Although enhanced interest under Section 6621(c) is an affected item, it has a partnership-item component and a nonpartnership-item component.  *Keener*, 76 Fed. Cl at 469.  The nonpartnership-item component of Section 6621(c) interest is whether the taxpayer's underpayment was substantial – $1,000 or greater – and whether it was attributable to a transaction previously determined at the partnership level to be tax-motivated.  The Tax Court does not have jurisdiction to make this nonpartnership determination in a partnership-level proceeding.  The Tax Court did not determine whether any underpayment by the Duffies was substantial or whether such underpayment was attributable to Texas Farm Venturers's disallowed farming expenses.  The Tax Court did determine – and had jurisdiction to do so – that the partnership's transactions resulting in the adjustments were a sham.  This determination of the partnership-item component of Section 6621(c) interest

is properly made at the partnership level.

Making the sham-transaction determination at the partner level could lead to inconsistent results.  TEFRA was intended to channel partnership items into a unified procedure for resolution; determining whether the partnership's activities were sham transactions in a partnership-level proceeding is consistent with that purpose.  The Tax Court had jurisdiction to determine whether the Texas Farm Venturers transactions were sham transactions.

### 3.    *Final Judgment on the Merits*

Section 6226(g) states that a determination by a court on the FPAA "shall have the force and effect of a decision of the Tax Court."  26 U.S.C. § 6226(g).  The Duffies assert that because the Tax Court decision was an agreed decision, drafted by the IRS, it should not be given preclusive effect.  The Fifth Circuit has held that an agreed decision in the Tax Court may be given res judicata effect.  *Shanbaum*, 10 F.3d at 313-14.  The court in *Shanbaum* stated that "[s]imply because the Tax Court decisions were reached by agreement does not mean that [the taxpayer's] income tax and transferee liabilities were not resolved by a [sic] final judgments on the merits for the purposes of res judicata."  *Id.*

Because an agreed decision is contractual in nature, the "preclusive effects should be measured by the intent of the parties."  18A WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 2D  § 4443.  Preclusion should be denied as to claims the parties intended to leave open for further litigation.  *See id*.  The Duffies argue

that the parties did not intend the Tax Court proceedings and decision to determine whether the assessment of Section 6621(c) interest at the partner level was appropriate.  The Duffies argue that they are not bound by the agreement in Attachment C to the IRS's Motion for Entry of Decisions, which stated that the limited partners would be estopped from challenging the assessment of interest under Section 6621(c).  (Docket Entry No. 29, Appendix at 63).

Once a partnership-level suit is filed in the Tax Court, the TMP may enter into a settlement agreement with the IRS that is binding on all the other partners, notice and non-notice, with respect to the determination of the partnership items in dispute.  TAX COURT R. 248(b)(1)(B), 251.  The agreement between the IRS and the TMP concerning Section 6621(c) interest, Attachment C, stated in relevant part:

> Effective upon entry of the Decision and in consideration of the reduced adjustments set forth therein, the partners expressly consent to the assessment of interest on the deficiencies in income tax, if any, which are attributable to the adjustments to the partnership items of the partnership at the increased rate specified in former I.R.C. § 6621(c).
>
> . . . .
>
> Absent a timely objection to the entry of decisions . . . the parties to the proceedings shall be presumed to have consented to all of the terms of the agreement described above and shall be estopped from challenging the adjustments to the partnership items determined in the decision and from challenging the assessment of interest accruing on any deficiencies in income tax attributable thereto at the increased rate prescribed by former I.R.C. § 6621(c).

(*Id.* at 59-63).[19]  The IRS's Motion for Entry of Decisions stated:

> [The IRS has made] preliminary determinations as to certain
> affected items, including the . . . assessment of interest on the
> deficiencies in the partners' income tax at the increased rate
> prescribed by the former I.R.C. § 6621(c); which
> determinations the tax matters partner and other partners are
> expected to dispute.

(Docket Entry No. 29, Appendix at 54, ¶ 16).

The agreement and decision are binding and preclude relitigation of partnership items.  This includes the partnership-item component of Section 6621(c), whether the partnership's transaction resulting in the adjustments was a sham transaction.  Although the IRS's Motion for Entry of Decisions states that the assessment of Section 6621(c) interest would not be subject to challenge by partners, the Motion also states that the IRS expected the partners to dispute the IRS's preliminary determinations as to the liability of the limited partners for additions to tax under Sections 6653 and 6661 and for the assessment of

---

[19] Attachment C also stated that the general partners of Texas Farm Venturers consented to the assessment of an addition to tax under 26 U.S.C. § 6661 at the rate of 10% of any additional tax deficiency resulting from the adjustments to partnership items in the Tax Court decision.  The time period for making this assessment began on the date the separate "Closing Agreement" between the IRS and the general partners of AMCOR partnerships became effective.  The Closing Agreement between the IRS and the general partners of Texas Farm Venturers, Robert A. Wright and Frederick Behrens, repeats the general partners' consent to assessment of an addition to tax under Section 6661 as stated in Attachment C. (Docket Entry No. 30, Ex. 8).  The Closing Agreement also stated that Wright and Behrens individually consented to the assessment of interest at the rate prescribed by Section 6621(c) for Wright's and Behren's tax underpayments.

In assessing interest against the Duffies under Section 6621(c), the IRS did not rely on the Closing Agreement, which only binds the general partners of Texas Farm Venturers, but rather on Attachment C, which binds the partners to the determination of partnership items in the Tax Court.  Because the Tax Court's determination that Texas Farm Venturers's activities were sham transactions is a partnership item, the Duffies' argument that they are not bound by the Closing Agreement is irrelevant.

33

Case 4:06-cv-02870   Document 40   Filed in TXSD on 09/30/08   Page 34 of 47

interest on the deficiencies in the partners' income tax at the rate set under Section 6621(c). (Docket Entry No. 29, Appendix at 54, ¶ 16). Taken together, these two sections of the Motion, the agreement, and the decision allow a partner-level challenge of the nonpartnership-item component of Section 6621(c) interest: whether the partner's underpayment was greater than $1,000 and whether it was attributable to the transaction previously determined at the partnership level to be tax-motivated.

Section 6621(c), Section 6653, and Section 6661(a), under which the IRS made determinations it expected the partners to dispute, all impose additional tax or interest for tax underpayment. Section 6653 imposes an addition to tax of "50 percent of the interest payable under Section 6601" for an underpayment "which is attributable to . . . negligence or intentional disregard" of rules or regulations. 26 U.S.C. § 6653(a)(2). Section 6661(a), in effect during tax years 1983 and 1984[20], provided that if there were a "substantial understatement" of income tax for a taxable year, a penalty of twenty-five percent of the amount of the underpayment attributable to the understatement would be imposed. An understatement was deemed substantial if it exceeded the greater of ten percent of the tax required to be shown on the return or $5,000. 26 U.S.C. § 6661(b).

It is instructive to look at the difference between Section 6621(c), on the one hand, and Sections 6653 and 6661, on the other, regarding the necessary factual findings at the partner level. Section 6653 requires a finding of the individual partner's negligence.

_____

[20] This provision was repealed in 1989. *See* Omnibus Budge Reconciliation Act of 1989, Pub. L. No. 101-239, § 7721(c)(2), 103 Stat. 2399.

*N.C.F. Energy Partners*, 89 T.C. at 744.  If the transaction is a tax shelter, Section 6661 requires a partner-level factual finding concerning the taxpayer's reasonable beliefs about litigation risks.  *Id.*   In contrast, if the partnership-level proceeding results in adjustments attributable to a tax-motivated transaction, the factual finding at the partner level for Section 6621(c) is computational.  The Tax Court has held that "Section 6621(c)'s applicability . . . turns on the amount of the taxpayer's underpayment attributable to a tax-motivated transaction."  *N.C.F. Energy Partners*, 89 T.C. at 746.  Determining the amount of a partner's underpayment resulting from the partnership-level adjustment resulting from a tax-motivated transaction is a computational task of deciding whether the underpayment amount was greater than $1,000.  Although some federal district courts in the Fifth Circuit have concluded that sham transaction requires an inquiry into the individual partner's profit motive[21], the Fifth Circuit has not adopted this requirement.  When a sham transaction is found at the partnership level, the factual finding required at the individual partner level is computational: whether the resulting underpayment was greater than $1,000.

The agreement in Attachment C states that "in consideration of the parties' consent to the assessment of interest at the rate prescribed by former I.R.C. § 6621(c), [the IRS] expressly waives all claims against the limited partners for any additions to tax that might be due under I.R.C. §§ 6653 and 6661." (Docket Entry No. 29, Appendix at 62).  However,

---

[21]*See Weiner*, 255 F.Supp.2d at 656-57; *Kraemer v. United States*, 2002 WL 575791 (S.D. Tex. Feb. 13, 2002); *Mellina v. United States*, 518 F.Supp.2d 825 (N.D. Tex. 2007); *Bartimmo v. United States*, 525 F.Supp.2d 879 (S.D. Tex. 2007).

the "general partners . . . consent[ed] to the assessment of an addition to tax pursuant to I.R.C. § 6661, at the rate of 10% of any additional tax deficiency which results from the adjustments to partnership items contained in the Decisions." (*Id.*). The IRS waived its claims against the general partners for the assessment of additional tax under Section 6653. (*Id.* at 63). When the IRS stated that it expected the partners to dispute its determinations under Sections 6653, 6661, and 6621(c), it expected that the general partners would dispute their reasonable belief about litigation risks under Section 6661 and that the limited partners would dispute the determination that their underpayments were greater than $1,000 under Section 6621(c) and whether that partner's underpayment resulted from the transaction previously determined at the partnership level to be tax-motivated. But nothing in the Motion or agreement allows a partner to relitigate the Tax Court's decision on the partnership-item components of Section 6621(c) interest. A partner may not relitigate the Tax Court's determination that the partnership transactions resulting in the adjustments were factual or economic shams, that is, tax-motivated transactions as defined in Section 6621(c).

An agreed decision in the Tax Court is generally treated as a final judgment on the merits, but its preclusive effect is limited to the items the parties agreed would be determined as a final matter, not subject to later dispute. Claim and issue preclusion cannot be applied against a party that did not have the opportunity to litigate the matters as to which preclusion is sought. *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 480-81 n.22

(1982).  Under the IRS's Motion for Entry of Decisions, the parties did not intend to determine all aspects of the assessment of interest under Section 6621(c) as to an individual partner.  The interest assessment is subject to later dispute at the partner level, but only as to the nonpartnership-item components of that assessment.  The parties did intend the agreed decision to be a final judgment on the merits as to all partnership items, including the determination that the Texas Farm Venturers transactions that resulted in the adjustments were sham transactions.  The Duffies may not dispute or relitigate the determinations made in the Tax Court as to the partnership-item components of the Section 6621(c) interest assessment.  The Duffies may dispute and litigate in a partner-level proceeding the nonpartnership-item components of Section 6621(c) interest: whether their underpayment was substantial and whether it was attributable to the transaction previously determined to be tax motivated.  The Duffies are free to challenge at the partner level the IRS's computation that their underpayment resulting from the adjustments to Texas Farm Venturers's farming expenses was greater than $1,000.

### 4.    *Same Claim or Cause of Action Involved in Both Suits*

The fourth element of *res judicata* is met because "one's total income tax liability for each taxable year constitutes a single, unified cause of action, regardless of the variety of contested issues and points that may bear on the final computation."  *Finley v. United States*, 612 F.2d 166, 170 (5th Cir. 1980).

## C.      Jurisdiction

The government claims that this court lacks subject-matter jurisdiction over the Duffies' refund claim because "[n]o action may be brought for a refund attributable to partnership items." 26 U.S.C. § 7422(h).  The Duffies argue that Section 7422(h) does not defeat this court's subject-matter jurisdiction because the assessment of interest under Section 6621(c) is an affected item, not a partnership item.  The government concedes that Section 6621(c) interest is an affected item but asserts that to decide the Duffies' claim, this court would have to revisit the Tax Court's determination of the character of the partnership-item adjustments, which is the partnership prong of Section 6621(c).

The government also argues that this court lacks subject-matter jurisdiction over the Duffies' claim because they failed to file a refund claim with the IRS within the six-month TEFRA limitations period.  The Duffies assert that the six-month filing requirement does not apply to this refund claim.

### 1.      *Section 7422(h) is a Bar to Jurisdiction*

The government argues that this court lacks jurisdiction, under Section 7422(h), to consider the Duffies' claim that the IRS erred in assessing Section 6621(c) interest against them.  The government asserts that there are two parts to the determination that Section 6621(c) interest applies: 1) the adjustments to the partnership's income, losses, deductions, or credits must cause the partners' underpayment to exceed $1,000; and (2) the adjustments must be attributable to a tax-motivated transaction.  26 U.S.C. § 6621(c)(2).  The

38

government argues that determining the Duffies' claim would require this court to examine partnership items, such as the adjustments to the partnerships expenses, over which this court lacks subject-matter jurisdiction.

The Duffies do not challenge the adjustments to the partnership's farming expenses that are part of the Tax Court agreed judgment. The Duffies agree that this court cannot redetermine whether the Texas Farm Venturers farming expenses lacked economic substance. The Duffies challenge the Tax Court's determination that Texas Farm Venturer's transactions were tax-motivated sham transactions.

The government cites *Keener*, 76 Fed. Cl. at 469, in which the plaintiff was a limited partner in an AMCOR partnership who sued for a refund of interest assessed under Section 6621(c). The court held that it lacked jurisdiction to consider the plaintiff's refund claim because that would require the court to decide whether it was proper to adjust partnership items, including income and expenses. Determining whether the plaintiff, a limited partner, was entitled to an interest refund would require the court to determine whether the interest was on adjustments "attributable to" the partnership-item component of Section 6621(c). The court concluded that it lacked jurisdiction to do so. *Id.*

The Duffies assert that Section 7422(h) is no bar to subject-matter jurisdiction because the IRS's interest assessment under Section 6621(c) is an affected item, not a partnership item. In *Field*, the court held that Section 7422(h) does not bar a district court from reviewing the plaintiff's claim for refund of interest assessed under Section 6621(c)

because the refund claim was not "attributable to a partnership item." 329 F.3d at 59. The court stated that to be attributable to a partnership item, the refund claim must be based on the assessment of a partnership item, and the assessment of interest on a partner under Section 6621(c) is an affected item, not a partnership item. *Id*. The court's holding was based in part on the statutory definition of "partnership item," which refers to the regulations for examples of partnership items. *See* 26 C.F.R. § 301.6231(a)(3)-1. Because Section 6621(c) interest is not found in the regulation, the court held that the assessment of Section 6621(c) is not a partnership item, but an affected item. *Id.*; *see also Mellina v. United States*, 518 F.Supp.2d 825, 828-29 (N.D. Tex. 2007); *McGann*, 76 Fed. Cl. at 757.

The Duffies' refund claim is attributable to the Tax Court's determination that the Texas Farm Venturers activities were sham transactions. The Duffies' claim is that the Tax Court's determination of sham transaction was insufficient because there was no finding that John Duffie lacked a profit motive. Because the nature of a partnership's activities – whether they are sham transactions –  is the partnership-item component of an affected item, the Duffies' refund claim is based on the determination of a partnership item. Section 7422(h) deprives this court of subject-matter jurisdiction to consider the Duffies' claim that the Tax Court erred in determining that the Texas Farm Venturers activities were tax-motivated sham transactions.

The Duffies also argue that Section 7422(h) does not bar jurisdiction because the partnership items at issue converted to nonpartnership items under the settlement agreement

with the IRS.  When a partner enters into a settlement agreement with the IRS concerning partnership items, these items are converted to nonpartnership items.   26 U.S.C. § 6231(b)(1)(C).  A partner who has settled with the IRS no longer has an interest in the partnership-level proceeding.  26 U.S.C. § 6226(d)(1)(A).  Any determination made at the partnership level will not apply to the settling partner.  The conversion from partnership items to nonpartnership items lifts the jurisdictional bar of Section 7422(h).  *Alexander v. United States*, 44 F.3d 328, 331 (5th Cir. 1995).

The Duffies' position is unpersuasive.  The agreement on which the Tax Court decision was based expressly states that it "does not act to convert partnership items to nonpartnership items, but rather, sets forth how the Decisions will be entered by the Tax Court which will be binding on the non-participating partners who are parties to these proceedings." (Docket Entry No. 30, Appendix at 55).  The Duffies' argument also ignores the statutory purpose and structure.  TEFRA's goal of uniformity is accomplished by channeling challenges to the adjustment of partnership items into a single, unified proceeding.  This goal would be undermined if a partner who participated in such a proceeding was able subsequently to challenge the partnership-level adjustments made in that proceeding in an individual refund action based on a "conversion."  The rule of conversion applies only to settlement agreements entered into before the partnership-level proceedings occur, not a contingent agreement that served as the basis for an agreed decision in a partnership-level proceeding in the Tax Court.

### 2.      *The Duffies' Failure to Timely File a Refund Claim Deprives this Court of Jurisdiction*

"The United States, as sovereign, is immune from suit save it consents to be sued

. . . and the terms of its consent to be sued in any court define that court's jurisdiction to

entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941).  Under Section

1346(a)(1), district courts have original jurisdiction over:

> [a]ny civil action against the United States for the recovery of
> any internal-revenue tax alleged to have been erroneously or
> illegally assessed or collected, or any penalty claimed to have
> been collected without authority or any sum alleged to have
> been excessive or in any manner wrongfully collected under
> the internal-revenue laws. . . .

28 U.S.C. § 1346(a)(1).  "Because tax refund suits are actions in which the sovereign has

waived its immunity and consented to be sued, statutory provisions governing such suits

are strictly construed."  *Alexander v. United States*, 829 F.Supp. 199, 200-01 (N.D. Tex.

1993).  One condition to suit against the United States is compliance with the time period

within which a claim must be filed.  Under 26 U.S.C. § 7422(a):

> No suit or proceeding shall be maintained in any court for the
> recovery of any internal revenue tax alleged to have been
> erroneously or illegally assessed or collected ... *until a claim
> for refund or credit has been duly filed with the Secretary,
> according to the provisions of law in that regard, and the
> regulations of the Secretary established in pursuance thereof.*

(emphasis added).  To overcome sovereign immunity in a tax refund action, a taxpayer

must file a refund claim with the IRS within the time limits established by the Internal

Revenue Code.  *United States v. Dalm*, 494 U.S. 596, 602 (1990).  A taxpayer's failure to file a timely refund claim with the IRS deprives the district court of subject-matter jurisdiction. *Gustin v. United States*, 876 F.2d 485, 488 (5th Cir. 1989).

The general limitations periods for filing refund claims with the IRS are prescribed by subchapter B of Chapter 66 of the Internal Revenue Code, set forth at 26 U.S.C. § 6511 *et seq.* (the "regular refund procedures").  Under Section 6511(a), a refund claim must be filed within the later of two years from the time the tax was paid or three years from the time the tax return was filed.  Under TEFRA, the regular refund procedures and the two or three year statutes of limitations do not apply to credit or refund of an overpayment "attributable to a partnership item (or an affected item )." 26 U.S.C. § 6230(d)(6).[22]

The two types of affected items, computational and substantive, each have different procedural requirements.  For computational affected items, the IRS need not issue a statutory notice of deficiency, and the TEFRA time requirements apply.  *Woody*, 95 T.C. at 201-02.  Under TEFRA, if the IRS erroneously computes the adjustment, the taxpayer must file a refund claim within six months after the IRS mails a notice of computational adjustment to the partner.  26 U.S.C. § 6230(c)(2)(A).  The IRS is required to follow the non-TEFRA deficiency procedures when making an adjustment relating to a noncomputational or "substantive" affected item.  26 U.S.C. § 6230(a)(2)(A)(I); 26 C.F.R.

---

[22] Section 6230(d)(6) was subsequently amended to remove the language "(or an affected item)." Taxpayer Relief Act of 1997, Pub. L. No. 105-34, § 1239(c)(1), 111 Stat. 788, 1028 (1997).  The amendment was effective only as to taxable years after August 5, 1997.  Id. at § 1239(f).

§ 301.6231(a)(6)-1T(a); *Woody*, 95 T.C. at 202; *N.C.F. Energy Partners*, 89 T.C. at 745.

The TEFRA time requirements do not apply to such substantive affected items. Instead,

refund claims based on substantive affected items are governed by the limitations period

in Section 6511(a). *Brookstone Corp. v. United States*, 1994 WL 621576 (S.D. Tex. May

23, 1994).

The government argues that the enhanced interest assessed against the Duffies under

Section 6621(c) is a computational affected item. In support, the government cites *Barlow*

*v. Commissioner*, 78 T.C.M. (RIA) ¶ 2000-339, 2000 WL 1649506 (T.C. 2000), which

states that Section 6621(c) interest "is an affected item because the determination of a

taxpayer's liability for such interest *may* require findings of fact peculiar to the particular

taxpayer, namely the amount of the taxpayer's underpayment that is attributable to a tax-

motivated transaction." (emphasis added). According to the government, the fact that

Section 6621(c) *may* require individual partner-level findings does not mean such findings

are always required. The *Barlow* court noted that once it decides "that there is a tax-

motivated transaction . . ., the determination of the additional interest is largely

mechanical." *Id.* at 2000-1945. Because the Tax Court judgment found that the

adjustments at the partnership level resulted from transactions lacking in economic

substance, the government argues that the determination of the Duffies' additional interest

was similarly mechanical. The government asserts that substantive affected items "are

more accurately described as affected items that depend on 'non-computational' partner-

level factual determinations." *Olson v. United States*, 37 Fed. Cl. 727, 732 n.7 (1997).  The factual determination at the partner level, according to the government, must be more than just computational or mechanical to be a substantive affected item.  There are no noncomputational facts, the government maintains, that must be determined at the partner level to determine whether Section 6621(c) interest was properly applied to the Duffies.

In response, the Duffies assert that the assessment of Section 6621(c) interest is a substantive affected item, requiring factual determinations at the partner level.  The Duffies cite *Mellina*, 518 F.Supp.2d at 829-30, and *Bartimmo*, 525 F.Supp.2d at 884.  In both *Mellina* and *Bartimmo*, the courts stated that Section 6621(c) interest is an affected item that turns on issues specific to the individual partners.  However, neither court analyzed or discussed what partner-specific issues had to be determined at the partner level.  The *Mellina* court relied on the Second Circuit's opinion in *Field*, 328 F.3d at 59, as holding that Section 6621(c) interest is always substantive affected item and not a computational adjustment.  The question before the *Field* court was whether Section 6621(c) is a partnership item, not whether it is a substantive or computational affected item.  The statement in *Field* that Section 6621(c) interest is a substantive affected item comes from a parenthetical in which the court summarized the holding of *Barlow*, 78 T.C.M. at 2000-339.  *Barlow* clarified that the partner-specific issues with respect to Section 6621(c) interest are "the amount of the taxpayer's underpayment that is attributable to a tax-motivated transaction."  *Id.* at 2000-1944.

In the Texas Farm Venturers case, the Tax Court determined that the adjustments

to partnership expenses were attributable to tax-motivated transactions.  The only issue in this partner-level refund action is whether the Duffies' tax underpayment resulting from the partnership transactions previously found to be tax-motivated was substantial, $1,000 or greater, clearly a computational rather than a substantive issue.  In this case, the IRS's assessment of interest under Section 6621(c) is a computational affected item.  Because the interest assessment under Section 6621(c) is a computational affected item in this case, the general limitations period of Section 6511(a) does not apply.  Rather, the TEFRA six-month statute of limitations applies to the Duffies' refund claim.

The Duffies have the burden of showing compliance with the applicable limitations period.  *See Makaraova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  The undisputed facts in the record show that the IRS notified the Duffies of the adjustments to their income tax liability on July 19, 2002 and assessed additional tax liability and interest on August 12, 2002.  The Duffies paid the full balance of tax and interest on September 9, 2002.  It is undisputed that the Duffies filed a refund claim on August 11, 2004.  The Duffies failed to timely file their refund claim with the IRS within the applicable six-month limitations period.

## IV.    Conclusion

The Tax Court's decision is *res judicata* with respect to partnership items, including the determination that the Texas Farm Venturers transactions that resulted in the partnership adjustments were sham transactions.  This court does not have subject-matter jurisdiction to review substantive issues relating to the interest assessment under Section

46

6621(c) because the interest assessment is attributable to a partnership item.   The partnership item, the character of the transactions that resulted in the adjustments, was resolved by the Tax Court's determination that the Texas Farm Venturers transactions were sham transactions.   This court also lacks subject-matter jurisdiction because the Duffies failed to timely file their refund claim with the IRS.   This court denies the Duffies' motion for summary judgment and grants the government's cross-motion for summary judgment. Final judgment is entered by separate order.

SIGNED on September 30, 2008, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

47